JEFFERSON B. SESSIONS, III, Attorney General
JOHN M. GORE, Acting Assistant Attorney General

ALEX G. TSE (CABN 152348), Acting United States Attorney

SAMEENA SHINA MAJEED, Chief
ANDREA K. STEINACKER, Special Litigation Counsel (WA 35688)
ELIZA H. SIMON (MD, no bar number)
       United States Department of Justice
       Civil Rights Division
       950 Pennsylvania Avenue, NW – NWB
       Washington, DC 20530
       Telephone: (202) 305-6785
       Fax: (202) 514-1116
       Eliza.Simon@usdoj.gov

Attorneys for Plaintiff United States of America

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NOTRE DAME DE NAMUR | ) | |
| UNIVERSITY and COLLEGE OF | ) | Civil Action No. _____ |
| NOTRE DAME, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

The United States of America alleges as follows:

NATURE OF THE ACTION

1.  The United States brings this action to enforce Title VIII of the Civil Rights Act of 1968,

as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601 *et seq.*

("Fair Housing Act" or "FHA").  This action is brought on behalf of Kristen Bloom pursuant to 42 U.S.C. § 3612(o).

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1345, 2201, and 2202, and 42 U.S.C. § 3612(o).

3. Venue is proper in this District under 28 U.S.C. § 1391(b) because the events or omissions giving rise to the United States' claims occurred there, and the property that is the subject of this suit is located there.

## INTRADISTRICT ASSIGNMENT

4. Intradistrict assignment to the San Francisco Division or the Oakland Division is proper, as this action arises out of activity in San Mateo County.  Civil L.R. 3-2(d).

## PARTIES AND PROPERTY

5. Notre Dame de Namur University ("NDNU" or the "University") is a private, non-profit, Catholic institution of higher education located at 1500 Ralston Avenue, Belmont, California.  The University has approximately 1,700 students and about 200 employees. It maintains on-campus housing for more than 430 students.

6. NDNU was known as College of Notre Dame until 2001.  College of Notre Dame is the property owner of record of some parcels of land located at 1500 Ralston Avenue, Belmont, California.

7. At all relevant times, Kristen Bloom is and has been a person with a disability as defined by the Fair Housing Act, 42 U.S.C. § 3602(h).

COMPLAINT

8. At all relevant times, NDNU is and has been responsible for the operation and management of its on-campus housing, including the University-owned apartment in which Ms. Bloom resided.

9. The University-owned apartment in which Ms. Bloom resided is a "dwelling" within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(b), and Ms. Bloom was a "renter" within the meaning of the Fair Housing Act, *id.* § 3602(e).

<u>FACTUAL ALLEGATIONS</u>

10. Kristen Bloom was diagnosed with anorexia nervosa in 2011.  She received in-patient care for her eating disorder for approximately two months, and out-patient care thereafter.

11. Ms. Bloom's anorexia nervosa has altered her digestive system and created lasting side effects that she must continually manage.  For example, Ms. Bloom must adhere to a strict diet and eating schedule.  She must also control her levels of stress and anxiety so that they do not exacerbate her health problems.  Because of her condition and its side effects, she is substantially limited in the major life activities of eating, digestion, and caring for herself.

12. In July 2013, Ms. Bloom accepted a position as a Residence Life Coordinator at NDNU. The position required her to live on campus.  Ms. Bloom's compensation included a salary of $32,000, a meal plan, and a University-owned apartment.

13. Ms. Bloom's on-campus apartment was a one-bedroom, one-bathroom unit with a kitchen and with private access from the exterior of the building.  She also had an office on campus that was separate from her University-owned housing.

COMPLAINT

14. Accepting the position at NDNU required Ms. Bloom to move to Belmont, California, several hours away from the network of family and friends she relied on to support her recovery from anorexia.

15. In or about July 2013, before Ms. Bloom moved to Belmont, her health care providers suggested she would benefit from an emotional support animal to help manage the transition to a new location and job.  Ms. Bloom did not pursue that recommendation at the time.  Once she began living and working at NDNU, however, Ms. Bloom found the distance from her loved ones to be isolating and stressful.

16. During the early summer of 2014, Ms. Bloom began experiencing heightened workplace stress.  Ms. Bloom's health began to suffer and she and her healthcare providers revisited the idea of an emotional support animal.  Together, they determined that obtaining an emotional support animal would help Ms. Bloom manage her increased stress and bolster her recovery.

17. At all relevant times, NDNU had a "no pet" policy for its on-campus housing.  The policy included an exception for "a service animal . . . if it is a reasonable accommodation for emotional disabilities of a resident."

18. On or about June 25, 2014, Ms. Bloom made an oral request to her direct supervisor for a reasonable accommodation to the "no pet" policy so that she could obtain an emotional support animal.  Her supervisor advised her to bring her request to the Human Resources department.

19. On or about July 2, 2014, Ms. Bloom informed Mary Haesloop, NDNU's Director of Human Resources, of her doctor's recommendation to obtain an emotional assistance

4                          COMPLAINT

animal.  Ms. Haesloop directed her to supply a note from her doctor and to follow the University's written policies.

20. On July 3, 2014, Ms. Bloom's doctor wrote a note stating, in relevant part:  "I am requesting an Emotional Service Animal for my patient, Kristen Bloom.  She is recovering from an eating disorder and I believe that it would be beneficial to have her dog to stay on track to recovery."  Ms. Bloom provided the note to Ms. Haesloop on or about July 14, 2014.  She also followed the University's written policies, as Ms. Haesloop had directed.

21. Around this time, and believing she had satisfied the University's requirements, Ms. Bloom obtained a three-month-old terrier mix named Bailey as an emotional support dog.

22. Ms. Bloom found that Bailey improved her overall wellbeing.  The dog kept Ms. Bloom on a routine, stabilized her eating patterns, reduced her stress, and provided companionship.  These benefits, in turn, improved Ms. Bloom's focus and her ability to do her job well.  Her direct supervisor noticed that Bailey's presence in Ms. Bloom's home improved Ms. Bloom's work performance.

23. On or about July 17, 2014, Ms. Haesloop informed Ms. Bloom that she could not keep Bailey on campus.  Ms. Bloom broke down in tears at this news.  Ms. Haesloop stated that the dog could stay for a short period of time.

24. Ms. Bloom provided NDNU with a note written by a nurse practitioner in her doctor's office dated July 17, 2014, that stated:  "I am requesting an Emotional Service Animal for my patient, Kristen Bloom, for therapeutic support.  She is recovering from an eating disorder and I believe that it would be beneficial for her to have her dog to stay on track to recovery."

COMPLAINT

25. On or about July 23, 2014, Ms. Haesloop instructed Ms. Bloom to remove Bailey from campus.  On July 25, 2014, Ms. Bloom moved the dog to her mother's house, approximately three hours away from Ms. Bloom's home at NDNU.

26. On August 1, 2014, Ms. Bloom provided NDNU with a note written by her doctor that stated:

> Kristen Bloom is my patient, and has been under my care since 2010.  I am intimately familiar with her history and with the functional limitations imposed by her disability.  She meets the definition of disability under the Americans with Disabilities Act, the Fair Housing Act, and the Rehabilitation Act of 1973.
>
> Her recovery has been going smoothly, but due to the lasting effects of eating disorders and the increased work related stress that Kristen has mentioned, I am prescribing an emotional support animal that will assist Kristen in coping with her disability.  I believe that an emotional support animal will help to alleviate the impact that stress and anxiety can have on relapse and enhance her ability to live independently and to fully use and enjoy the dwelling you own and/or administer.
>
> I am familiar with the voluminous literature concerning the therapeutic benefits of assistance animals for people with disabilities such as experienced by Kristen.  I would be happy to answer any questions you may have concerning my recommendation that Kristen Bloom have an emotional support animal.  Should you have any additional questions, within the bounds of HIPAA, please do not hesitate to contact me.

27. On several occasions in July and August 2014, Ms. Bloom described her eating disorder, treatment history, current health status, and need for an emotional support animal to officials at NDNU, including Ms. Haesloop, orally and in writing.

28. On several occasions in July and August 2014, Ms. Bloom provided documentation about Bailey to Ms. Haesloop, including veterinary and vaccination records, and a licensing certificate from San Mateo County.

29. Ms. Bloom never requested to bring Bailey with her to the office or to keep the dog anywhere other than her apartment.

COMPLAINT

30. On August 11, 2014, Ms. Haesloop wrote a letter stating that Ms. Bloom's accommodation request was denied, and that she was "unable to conclude" whether Ms. Bloom was a person with a disability or how Bailey assisted with her disability.

31. On August 14, 2014, Ms. Bloom wrote a letter to Ms. Haesloop providing additional information about her disability and her need for an assistance animal.

32. On August 22, 2014, Ms. Haesloop again denied Ms. Bloom's request for a reasonable accommodation by letter.  She stated that she still could not conclude whether Ms. Bloom was a person with a disability and that she believed Ms. Bloom's accommodation request was not reasonable.

33. On August 26, 2014, Ms. Bloom went to the doctor because she had been experiencing nausea, vomiting, and severe diarrhea.  Her medical provider noted that she had lost seven pounds of weight since her visit a few weeks earlier, on August 1, 2014.  The provider placed Ms. Bloom on disability leave for the next two weeks and wrote a note stating:  "Kristen Bloom . . . is currently being followed and managed for a chronic medical condition.  Her current condition has caused return of her symptoms and because of this, she will need to be removed from her work environment and job."  Ms. Bloom vacated her apartment and moved in with her mother and Bailey.

34. On or about September 18, 2014, the Center for Independence of Individuals with Disabilities ("the Center"), a non-profit organization, sent a letter to Ms. Haesloop renewing Ms. Bloom's reasonable accommodation request.  NDNU did not substantively respond to the Center.

COMPLAINT

35. On or about October 7, 2014, Ms. Haesloop again wrote to Ms. Bloom.  In this letter, she stated, "I do presently agree that you are a person with a disability but I remain of the decision that having your dog is not reasonable."

36. On or about October 23, 2014, an attorney from the Legal Aid Society of San Mateo County made another reasonable accommodation request on Ms. Bloom's behalf to NDNU.  The University denied that request on or about November 4, 2014.

37. On or about November 18, 2014, a representative from Project Sentinel, a non-profit fair housing agency, made yet another reasonable accommodation request on Ms. Bloom's behalf.  The University never responded.

38. Ms. Bloom remained on disability leave under doctor's orders until January 2015.  She never returned to live or work at NDNU.  On or about December 19 and 20, 2014, Ms. Bloom returned to NDNU and permanently removed her belongings from her apartment. On January 2, 2015, Ms. Bloom resigned from her position.

39. On or about January 16, 2015, Ms. Bloom filed a housing discrimination complaint with the U.S. Department of Housing and Urban Development ("HUD") alleging that the University discriminated against her on the basis of disability by refusing to grant her request for a reasonable accommodation to the no-pet policy to allow her to have an assistance animal in her apartment.  Pursuant to an agreement between HUD and the California Department of Fair Employment and Housing ("DFEH"), DFEH opened an investigation into the complaint.  The investigation was eventually transferred back to HUD and completed by that agency.

8                                          COMPLAINT

<u>HUD ADMINISTRATIVE PROCESS</u>

40. On or about January 16, 2015, Ms. Bloom filed a timely Fair Housing Complaint with HUD, naming Defendants Notre Dame de Namur University and the College of Notre Dame as respondents. The complaint was amended on September 7, 2017.

41. Pursuant to 42 U.S.C. § 3610, the Secretary of HUD conducted and completed an investigation, attempted conciliation without success, and prepared a final investigative report.  Based upon the information gathered in the investigation, the Secretary, pursuant to 42 U.S.C. § 3610(g)(1), determined that reasonable cause existed to believe that Defendants violated the Fair Housing Act.  Therefore, on September 28, 2017, the Secretary issued a Charge of Discrimination, pursuant to 42 U.S.C. § 3610(g)(2)(A), charging the Defendants with engaging in discriminatory housing practices on the basis of disability.

42. On October 10, 2017, Ms. Bloom elected to have the claims asserted in the HUD Charge resolved in a civil action pursuant to 42 U.S.C. § 3612(a).  On October 11, 2017, an Administrative Law Judge issued a Notice of Election to Proceed in United States Federal District Court and terminated the administrative proceeding on Ms. Bloom's HUD complaint.

43. Following this Notice of Election, the Secretary of HUD authorized the Attorney General to commence a civil action pursuant to 42 U.S.C. § 3612(o).

44. On November 7, 2017, the United States and the Defendants executed an agreement that tolled the expiration of any statute of limitations in this action until December 11, 2017. On December 7, 2017, the United States and the Defendants executed a second agreement that tolled the expiration of any statute of limitations in this action until

COMPLAINT

January 26, 2018.  On January 23, 2018, the United States and the Defendants executed a third agreement that tolled the expiration of any statute of limitations in this action until February 23, 2018.

COUNT I

45. Plaintiff re-alleges and incorporates by reference the allegations set forth above.

46. By the actions set forth above, Defendants have:

    a.  Discriminated in the rental, or otherwise made unavailable or denied, a dwelling to a renter on the basis of disability, in violation of 42 U.S.C. § 3604(f)(1);

    b.  Discriminated in the terms, conditions or privileges of the rental of a dwelling, or in the provision of services or facilities in connection therewith, on the basis of disability, in violation of 42 U.S.C. § 3604(f)(2); and

    c.  Refused to make reasonable accommodations in rules, policies, practices or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling, in violation of 42 U.S.C. § 3604(f)(3)(B).

47. As a result of Defendants' conduct, Ms. Bloom has been injured and is an "aggrieved person" as defined by 42 U.S.C. § 3602(i).

48. The discriminatory actions of the Defendants were intentional, willful, and taken in reckless disregard of the rights of Ms. Bloom.

PRAYER FOR RELIEF

WHEREFORE, the United States of America prays for relief as follows:

1. A declaration that the discriminatory conduct of Defendants as set forth above violates the Fair Housing Act;

2.  An injunction against Defendants, their agents, employees, successors, and all
    other persons in active concert or participation with any of them from:

    a.      Discriminating on the basis of disability, in violation of the Fair Housing Act;

    b.      Failing or refusing to take such affirmative steps as may be necessary to restore,
            as nearly as practicable, Ms. Bloom to the position she would have been in but for
            the discriminatory conduct; and

    c.      Failing or refusing to take such affirmative steps as may be necessary to prevent
            the recurrence of any discriminatory conduct in the future.

3.  An award of monetary damages to Ms. Bloom pursuant to 42 U.S.C. §§ 3612(o)(3) and
    3613(c)(1).

The United States further prays for such additional relief as the interests of justice may require.

Dated: February 22, 2018

Respectfully submitted,

JEFFERSON B. SESSIONS, III
Attorney General

JOHN M. GORE
Acting Assistant Attorney General
Civil Rights Division

ALEX G. TSE
Acting United States Attorney
Northern District of California

SAMEENA SHINA MAJEED
Chief, Housing and Civil Enforcement Section

/s/ Eliza H. Simon
ANDREA K. STEINACKER
Special Litigation Counsel
ELIZA H. SIMON
Trial Attorney

Attorneys for Plaintiff United States of America

# CIVIL COVER SHEET

The JS-CAND 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
United States of America

**DEFENDANTS**
Notre Dame de Namur University; College of Notre Dame

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    San Mateo County
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Eliza H. Simon, U.S. Department of Justice, Civil Rights Division, 950 Pennsylvania Ave. NW-NWB, Washington, DC 20530; (202) 305-6785

Attorneys *(If Known)*
Michael J. Vartain, Vartain Law Group, 601 Montgomery Street, Suite 780, San Francisco, CA 94111; (415) 391-1155

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

[x] 1  U S Government Plaintiff

[ ] 2  U S Government Defendant

[ ] 3  Federal Question *(U.S. Government Not a Party)*

[ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated *or* Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated *and* Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC § 881 | 422 Appeal 28 USC § 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury – Product Liability | 690 Other | 423 Withdrawal 28 USC § 157 | 376 Qui Tam (31 USC § 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability | 367 Health Care/ | **LABOR** | **PROPERTY RIGHTS** | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | Pharmaceutical Personal Injury Product Liability | 710 Fair Labor Standards Act | 820 Copyrights | 410 Antitrust |
| 150 Recovery of Overpayment Of Veteran's Benefits | 330 Federal Employers' Liability | 368 Asbestos Personal Injury Product Liability | 720 Labor/Management Relations | 830 Patent | 430 Banks and Banking |
| 151 Medicare Act | 340 Marine | **PERSONAL PROPERTY** | 740 Railway Labor Act | 835 Patent—Abbreviated New Drug Application | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 345 Marine Product Liability | 370 Other Fraud | 751 Family and Medical Leave Act | 840 Trademark | 470 Racketeer Influenced & Corrupt Organizations |
| | 350 Motor Vehicle | 371 Truth in Lending | 790 Other Labor Litigation | **SOCIAL SECURITY** | 480 Consumer Credit |
| 153 Recovery of Overpayment of Veteran's Benefits | 355 Motor Vehicle Product Liability | 380 Other Personal Property Damage | 791 Employee Retirement Income Security Act | 861 HIA (1395ff) | 490 Cable/Sat TV |
| 160 Stockholders' Suits | 360 Other Personal Injury | 385 Property Damage Product Liability | **IMMIGRATION** | 862 Black Lung (923) | 850 Securities/Commodities/ Exchange |
| 190 Other Contract | 362 Personal Injury -Medical Malpractice | | 462 Naturalization Application | 863 DIWC/DIWW (405(g)) | 890 Other Statutory Actions |
| 195 Contract Product Liability | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 465 Other Immigration Actions | 864 SSID Title XVI | 891 Agricultural Acts |
| 196 Franchise | 440 Other Civil Rights | **HABEAS CORPUS** | | 865 RSI (405(g)) | 893 Environmental Matters |
| **REAL PROPERTY** | 441 Voting | 463 Alien Detainee | | **FEDERAL TAX SUITS** | 895 Freedom of Information Act |
| 210 Land Condemnation | 442 Employment | 510 Motions to Vacate Sentence | | 870 Taxes (U S  Plaintiff or Defendant) | 896 Arbitration |
| 220 Foreclosure | [x] 443 Housing/ Accommodations | 530 General | | 871 IRS–Third Party 26 USC § 7609 | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 230 Rent Lease & Ejectment | 445 Amer w/Disabilities– Employment | 535 Death Penalty | | | 950 Constitutionality of State Statutes |
| 240 Torts to Land | 446 Amer w/Disabilities–Other | **OTHER** | | | |
| 245 Tort Product Liability | 448 Education | 540 Mandamus & Other | | | |
| 290 All Other Real Property | | 550 Civil Rights | | | |
| | | 555 Prison Condition | | | |
| | | 560 Civil Detainee– Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

[x] 1  Original Proceeding

[ ] 2  Removed from State Court

[ ] 3  Remanded from Appellate Court

[ ] 4  Reinstated or Reopened

[ ] 5  Transferred from Another District *(specify)*

[ ] 6  Multidistrict Litigation–Transfer

[ ] 8  Multidistrict Litigation–Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U S C § 3601 et seq

Brief description of cause:
Discrimination on the basis of disability in housing

## VII. REQUESTED IN COMPLAINT:
[ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, Fed. R. Civ. P.    DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes  [ ] No

## VIII. RELATED CASE(S), IF ANY *(See instructions)*:
JUDGE                DOCKET NUMBER

## IX. DIVISIONAL ASSIGNMENT (Civil Local Rule 3-2)
*(Place an "X" in One Box Only)*    [x] SAN FRANCISCO/OAKLAND    [ ] SAN JOSE    [ ] EUREKA-MCKINLEYVILLE

DATE  02/22/2018    SIGNATURE OF ATTORNEY OF RECORD    /s/ Eliza H. Simon

[ Print ]    [ Save As... ]    [ Reset ]

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-CAND 44

**Authority For Civil Cover Sheet.** The JS-CAND 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I. a)**    **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **b)**    **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **c)**    **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)."

**II.**    **Jurisdiction.** The basis of jurisdiction is set forth under Federal Rule of Civil Procedure 8(a), which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

   (1)    <u>United States plaintiff</u>. Jurisdiction based on 28 USC §§ 1345 and 1348. Suits by agencies and officers of the United States are included here.

   (2)    <u>United States defendant</u>. When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

   (3)    <u>Federal question</u>. This refers to suits under 28 USC § 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

   (4)    <u>Diversity of citizenship</u>. This refers to suits under 28 USC § 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**.** (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**    **Residence (citizenship) of Principal Parties.** This section of the JS-CAND 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**    **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.**    **Origin.** Place an "X" in one of the six boxes.

   (1)    <u>Original Proceedings</u>. Cases originating in the United States district courts.

   (2)    <u>Removed from State Court</u>. Proceedings initiated in state courts may be removed to the district courts under Title 28 USC § 1441. When the petition for removal is granted, check this box.

   (3)    <u>Remanded from Appellate Court</u>. Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

   (4)    <u>Reinstated or Reopened</u>. Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

   (5)    <u>Transferred from Another District</u>. For cases transferred under Title 28 USC § 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

   (6)    <u>Multidistrict Litigation Transfer</u>. Check this box when a multidistrict case is transferred into the district under authority of Title 28 USC § 1407. When this box is checked, do not check (5) above.

   (8)    <u>Multidistrict Litigation Direct File</u>. Check this box when a multidistrict litigation case is filed in the same district as the Master MDL docket.

     <u>Please note that there is no Origin Code 7</u>. Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.**    **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC § 553. Brief Description: Unauthorized reception of cable service.

**VII.**    **Requested in Complaint.** <u>Class Action</u>. Place an "X" in this box if you are filing a class action under Federal Rule of Civil Procedure 23.

     <u>Demand</u>. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.

     <u>Jury Demand</u>. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS-CAND 44 is used to identify related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**IX.**    **Divisional Assignment.** If the Nature of Suit is under Property Rights or Prisoner Petitions or the matter is a Securities Class Action, leave this section blank. For all other cases, identify the divisional venue according to Civil Local Rule 3-2: "the county in which a substantial part of the events or omissions which give rise to the claim occurred or in which a substantial part of the property that is the subject of the action is situated."

**Date and Attorney Signature.** Date and sign the civil cover sheet.